IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY SHELTON,<br><br>Defendant. | Case No.: 3:21-cr-00224-AN-3<br><br>OPINION AND ORDER |

Defendant Timothy D. Shelton moves this Court to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), *i.e.*, for compassionate release. The government opposes the motion. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. *See* Local R. 7-1(d). For the reasons set forth below, the motion is DENIED.

## LEGAL STANDARDS

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This "general rule," however, "is subject to several exceptions." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). One such exception, known as "compassionate release," is found in 18 U.S.C. § 3582(c)(1)(a). Because "compassionate release derogates from the principle of finality, it is a 'narrow' remedy." *United States v. Wright*, 46 F.4th 938, 944-45 (9th Cir. 2022) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

Compassionate release is discretionary. *Id.* at 945. However, courts may only exercise their discretion to grant compassionate release if the defendant shows that four conditions are met: "(1) the defendant exhausted administrative remedies; (2) 'extraordinary and compelling reasons' warrant a sentence reduction; (3) a sentence reduction is 'consistent with applicable policy statements' issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)."

1

*United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)).[1]  All four elements are required, meaning a court must walk through these steps sequentially before granting a motion for compassionate release.  *Keller*, 2 F.4th at 1284.  This also means a "district court may deny the defendant's motion if he fails to satisfy any of these conditions" and thus need not walk through each step before issuing a denial.  *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025).

## BACKGROUND

**A.    Case Background**

In 2020, Drug Enforcement Administration ("DEA") agents identified defendant during an ongoing drug investigation.  *See* Presentence Investigation Rep. ("PSR"), ECF [158], ¶ 22[2].  Agents intercepted various phone calls between defendant and a known co-defendant discussing controlled substance deliveries.  *Id.* ¶ 24.  Agents also confiscated a ledger that showed defendant's involvement in certain drug transactions and observed defendant purchasing heroin.  *Id.* ¶¶ 22, 26.

On July 13, 2021, investigators searched defendant's residence and seized 34.1 gross grams of methamphetamine, three firearms, and $280,055 in cash.  *Id.* ¶ 27.  Defendant, defendant's wife, and defendant's then-juvenile son were all present during the search.  *Id.*

On September 8, 2021, a federal summons was issued to defendant and served on his wife at their residence.  *Id.* ¶ 29.  Defendant appeared on the summons on September 13, 2021, and was released under pretrial supervision with certain conditions.  *Id.*  On June 17, 2022, defendant was deemed to have absconded supervision, and a pretrial violation warrant was issued for his arrest.  *Id.*

On April 16, 2023, Marion County sheriff's deputies observed defendant's vehicle parked outside of a residence known for drug involvement.  *Id.* ¶ 30.  A sheriff's deputy told defendant he was under arrest pursuant to a federal warrant.  *Id.*  Defendant then retreated inside the residence and was ultimately found lying down inside a shed located on the property.  *Id.* ¶ 31.  When asked, defendant

---

[1] Although not relevant here, a defendant need not show "extraordinary and compelling reasons" for the reduction in sentence if he, instead, establishes the requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).
[2] All cites to the PSR reference the numbered paragraphs found on pages 10-29 of the filed document.

provided a false name and date of birth. *Id.* He also told officers that he had a firearm in his pocket, which the officers retrieved. *Id.* ¶ 32. Officers then placed defendant under arrest and transported him to the Marion County Jail. *Id.*

On June 24, 2024, defendant waived indictment and pleaded guilty to one count of conspiring to distribute " a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance; in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and § 846" ("Count One") and one count of "felon in possession of a firearm . . . while on pretrial release pursuant to the Bail Reform Act of 1966; in violation of 18 U.S.C. § 922(g)(1) and § 3147" ("Count Two"). *Id.* ¶¶ 1-2. The sentencing guidelines were calculated as an imprisonment range of 108 to 135 months based on a total offense level of 31 and a criminal history category of I. *Id.* ¶ 102. The parties entered a plea agreement jointly recommending a downward variance resulting in "a sentence of 58 months in Count One to be followed by 12 months consecutive in Count Two (total sentence of 70 months)." Plea Agreement, ECF [154], ¶ 9.

On October 1, 2024, District Judge Michael W. Mosman sentenced defendant to 58 months commitment for Count One and 12 months commitment for Count Two, to be served consecutively to the sentence imposed in Count One. Judgment & Commitment, ECF [162]. Defendant states that his projected release date is February 14, 2028. Def. Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) ("Def. Mot."), ECF [166], at 2. The government states that defendant's projected release date is December 1, 2027.[3] Government Resp. to Def. Mot. ("Gov't Resp."), ECF [168], at 3.

On September 22, 2025, defendant filed the operative motion for compassionate release. On August 28, 2025, defendant emailed the Court with a memorandum supporting his motion. August 28, 2025 Letter Mem. from Def. to Court ("Def. Mem."), ECF [169]. Allegations detailed in the memorandum are described below. On September 28, 2025, the Court received an email from defendant's wife encouraging the Court to expediently consider defendant's motion. On October 17, 2025, the government filed its response in opposition to defendant's motion.

---

[3] The Federal Bureau of Prisons website indicates that defendant's projected release date is November 16, 2027. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc (last visited November 4, 2025).

B.    **Defendant's Background as Described in Presentence Report and Submitted Evidence**

Defendant's father is in his 80s and his mother is deceased. PSR ¶ 79. He does not have any siblings, but he has a cousin who he considers to be like a brother.[4] *Id.* Defendant's parents separated before his birth and often left defendant in the care of relatives. *Id.* ¶ 80.

At age 17, defendant enlisted in the United States Army. *Id.* ¶ 98. He served for four years before being honorably discharged. *Id.* Defendant has been married to his wife for over thirty years. *Id.* ¶ 83. They have one son, who is now a young adult attending college nearby and is described as a potential source of community support for defendant. *Id.*; Def. Mot. at 11. Defendant has reported having no sources of income while in custody, although he does own two pieces of property. *Id.* ¶ 100. He also explains that he worked in the lumber business as an owner and operator for over twenty years and that he owns his house in Salem, Oregon, where his 62-year-old wife and 53-year-old cousin currently reside. Def. Mot. at 9.

Defendant attached certain evidence to his motion providing additional details on his background and his family's current status. *See* Def. Mot. First, he includes his father's medical records. *Id.* at 18. These records show that defendant's father is suffering from numerous serious ailments including atrial fibrillation, aortic root dilation, and enlargement of the abdominal aorta. *Id.* The records also show that his father requires numerous medications to treat these conditions, as well as his diabetes, diabetes-associated neuropathy, hypertensive heart disease, and arthropathy. *Id.* at 21-25. His father's medical history additionally reveals that he has a pacemaker and previously underwent an amputation of his left foot. *Id.* at 25.

Second, defendant attaches a request he submitted to prison staff on March 30, 2025, explaining that he has a hernia that is growing and causing increasing pain. *Id.* at 29. Another document, dated August 12, 2025, shows that the prison has approved defendant for hernia surgery. *Id.* at 30.

---

[4] Defendant refers to this person as his brother in his motion for compassionate release. *See* Def. Mot. 9. Without diminishing the closeness of defendant's relationship, the Court will refer to this person as a "close cousin" to distinguish them from defendant's other bother.

Third, defendant attaches numerous documents demonstrating his accomplishments while incarcerated. These include a certificate of completion for a drug abuse education course, *id.* at 31; a certificate of completion for a substance abuse curriculum, *id.* at 32; a certificate of completion for a traumatic stress and resilience program, *id.* at 33; a certificate of completion for "Soldier On," *id.* at 34; a certificate of completion for a faith-based conflict management course, *id.* at 35; and additional handwritten notes indicating defendant's completion of additional programs, *id.* at 37-39.

Lastly, defendant submits his April 2, 2025 request to the warden for compassionate release, *id.* at 43, along with the warden's June 30, 2025 response, *id.* at 41-42. The request states that defendant is applying for "[c]ompassionate release to take care of [his] elder [f]ather who was left without a care-giver when his wife, who was also his care-giver, died in an accidental drowning." *Id.* at 43. The letter explains his father's needs and details defendant's accomplishments throughout his incarceration. *Id.* The warden's response denies defendant's request, which it describes as a "request based on a caregiver for your elderly father." *Id.* at 41. The response notes that the PSR contains minimal information about defendant's father and that there is no category in the compassionate release guidelines for incapacitation of a parent. *Id.*

## C.    Defendant's Motion

Defendant alleges three bases for release: (1) his "suffering from a medical condition that requires long-term or specialized medical care that is not being provided"; (2) the "ongoing outbreak of infectious disease or ongoing public health emergency . . . that, due to personal health factors and custodial status, has caused [defendant] an increased risk of suffering severe medical complications or death"; and (3) that his "immediate family member . . . has become incapacitated, and [he is] the only available caregiver for them." *Id.* at 4. More specifically, he explains that "[his] father is rapidly deteriorating in health with no assistance, while [his] own person is currently being exposed to what could be a life threatening additional exposure to COVID-19, while not even being treated for a painful and expanding hernia after 28 months." *Id.* at 6.

5

In defendant's letter to the court, he provided the following additional information. First, he explained that his father was drafted and deployed to Vietnam before defendant's birth and that defendant was falsely told that his father had been killed in action. Def. Mem. Twenty years later, he finally met his father, and the two have since developed a strong and loving relationship. *Id.*

Second, defendant states that his father's wife suffered a heart attack or embolism at home in 2024 and subsequently drowned while bathing. *Id.* Defendant's father now lives alone in a rural home despite struggling with severe health issues. *Id.* His father reportedly needs a pacemaker replaced but was told that he was unlikely to survive the surgery. *Id.*

Third, defendant reports that his father has one other son, but they are estranged due to the son's repeated theft and drug issues. *Id.* This son has previously stolen his father's medications as well. *Id.*

Fourth, defendant states that he suffered a heart attack or stroke while in custody and has supported his wife from afar as she battled and overcame cancer. *Id.* He additionally states that he was diagnosed with diabetes and has endured a painful, unthreatened hernia for 31 months. *Id.* Lastly, he states that he survived COVID-19 three times, including one instance that required hospitalization and ventilator support in the ICU. *Id.* He has been warned that another case could be fatal. *Id.*

Defendant goes on to state that he takes responsibility for his actions and has committed himself to self-improvement, including by participating in programming, helping others, and maintaining a clean disciplinary record during his 31-months of incarceration. *Id.* Defendant closed his letter by writing that he hopes to reunite with his father "in his final years, to support him, and to cherish time" that was "unfairly denied" for twenty years, and that he is "willing to meet any condition [the Court] deem[s] necessary in order to earn this opportunity." *Id.*

## DISCUSSION

A. **Administrative Exhaustion**

Defendant has failed to administratively exhaust the grounds for relief based on his

personal health issues and COVID-19 concerns.[5]  Section 3582(c)(1)(A)'s "administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." *Keller*, 2 F.4th at 1282.  A district court "may not . . . excuse a defendant's failure to satisfy that requirement over the government's timely objection." *Id.*

District courts within the Ninth Circuit are split on whether section 3582(c)(1)(A) imposes an "issue exhaustion" requirement.  *See United States v. Morfin-Rios*, No. 3:18-cr-04997-JAH, 2023 WL 4355341, at *2 (S.D. Cal. July 5, 2023) ("The Ninth Circuit has not specifically addressed whether imposing an 'issue exhaustion' requirement for § 3582 motions is appropriate, and district courts within this Circuit have not found any unanimity on the matter." (collecting cases)).  Some courts have held that defendants must exhaust each specific "extraordinary and compelling circumstance" to satisfy the administrative exhaustion requirements.  *See, e.g.*, *United States v. Bakhtiari*, No. CR 18-0009 WHA, 2022 WL 1289050, at *2 (N.D. Cal. Apr. 30, 2022) (requiring issue exhaustion); *United States v. Roueche*, No. CR07-344RSL, 2021 WL 2778577, at *4 (W.D. Wash. July 2, 2021) (finding that the defendant had not met the exhaustion requirement because "the current grounds are not at all similar to the grounds [the] defendant articulated . . . in his request to the Warden"); *United States v. Narez*, No. 1:05-CR-00231-AWI, 2021 WL 5566787, at *4 (E.D. Cal. Nov. 29, 2021) (finding a failure to exhaust where defendant failed to show that the relevant "arguments were raised in a request to the warden").  Other courts have rejected this approach, finding that section 3582(c)(1)(A) "does not require the inmate to set forth an exhaustive list of potential grounds for release." *United States v. Sawyers*, No. CR 15-00070-RSWL-1, 2021 WL 2581412, at *2 (C.D. Cal. June 22, 2021).

Only one appellate court, the Seventh Circuit, has issued a published order squarely addressing this question.  *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).  In *Williams*, the Seventh Circuit reasoned an inmate must "present the same or similar ground for compassionate release in a request to the Bureau [of Prisons] as in a motion to the court" because "any contrary approach would

---

[5] The government does not argue that defendant failed to exhaust his administrative remedies as to his father's need for care.

undermine the purpose of exhaustion." *Id.* The court explained that the purpose of the exhaustion requirement is to provide the Bureau of Prisons ("BOP") "with the information necessary to move for release on a defendant's behalf" and that the BOP's own regulation requires inmates to "detail the circumstances warranting [their] compassionate release." *Id.* (citing 28 C.F.R. § 571.61(a)(1)). As the Seventh Circuit explained, the Supreme Court has "cautioned courts to refrain from imposing issue-exhaustion requirements, particularly" in proceedings like those for social security benefits or compassionate release, "where there is no adversarial administrative proceeding." *Id.* (citing *Sims v. Apfel*, 530 U.S. 103, 108-10 (2000)). But the Seventh Circuit found that section 3582(c)(1)(A)'s exhaustion requirement more closely resembled the Prison Litigation Reform Act's ("PLRA") "proper exhaustion" requirement than the social security regulations at issue in *Sims* because both the PLRA and compassionate release administrative exhaustion regimes are intended to "afford prisons an opportunity to address issues before they are brought to federal court." *Id.* at 703 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Accordingly, the Seventh Circuit found that section 3582(c)(1)(A) demands exhaustion of the specific issues presented to the district court.[6]

One unpublished Ninth Circuit opinion also counsels in favor of issue exhaustion. In *United States v. Rice*, the defendant submitted requests for compassionate release to their "unit manager and made no mention of COVID-19 or any other medical conditions" within the request. 848 F. App'x 320, 321 (9th Cir. 2021). Quoting 28 C.F.R. § 571.61(a), the Ninth Circuit explained that the "inmate's request to the BOP must be submitted to the warden and, at a minimum, contain the 'extraordinary or compelling circumstances that the inmate believes warrant consideration.'" *Id.* Because the defendant's request did not meet this standard, the Ninth Circuit held that "the district court lacked authority to address [the defendant's] motion" and remanded with instructions to dismiss the action without prejudice. *Id.* [7] The unpublished

---

[6] The Third Circuit cited *Williams* in an unpublished opinion for the general proposition that a defendant must exhaust administrative remedies. *See United States v. Johnson*, No. 21-2649, 2022 WL 1402048, at *1 (3d Cir. May 4, 2022). However, the Third Circuit did not reach the question of specific-issue exhaustion raised in *Johnson* because the defendant there did not submit his request to the warden until after he filed his motion with the district court. *Id.*

[7] Several courts within this Circuit have since cited *Rice* in finding that section 3582(c)(1)(A) requires issue

8

decisions of other circuits lend further support to this position. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("[The defendant] was required to exhaust [two specific arguments for compassionate relief] by filing a request with the [Bureau of Prisons], but he failed to do so. Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal."); *United States v. Gieswein*, 832 F. App'x 576, 578 (10th Cir. 2021) ("[The defendant's] request to the warden did not include COVID-19 as a reason for compassionate release. Therefore, he has failed to meet the statute's exhaustion requirements and his COVID-19 justification was properly dismissed.").

        While the extent of issue exhaustion required is not clear, this Court is persuaded that a defendant's motion must "present the same or similar ground for compassionate release" as those presented to the BOP to satisfy the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). *Williams*, 987 F.3d at 703. Here, defendant wrote to the warden on April 2, 2025, applying for "[c]ompassionate release to take care of my elderly [f]ather who was left without a care-giver when his wife, who was also his care-giver, died in an accidental drowning." Def. Mot. 43. Defendant went on to describe his father's extensive ailments, as well as his own positive accomplishments and background. *Id.* He states that he could take his father to doctor's appointments, complete grocery shopping and medication retrievals, and "do all household chores and cooking as needed." *Id.* The request does not state that defendant suffers from any physical maladies—on the contrary, it suggests he is healthy enough to take care of his father.

        One June 30, 2025, the warden responded to what he described as defendant's "request based on a caregiver for your elderly father." *Id.* at 41. The warden also noted that "the only information about" the defendant's father in the PSR is that his "parents were separated before birth." *Id.* Otherwise,

---

exhaustion. *See, e.g.*, *United States v. Rosario*, No. 3:16-CR-00047-TMB, 2021 WL 4823259, at *2 (D. Alaska Oct. 15, 2021) ("The Ninth Circuit has found that requests for compassionate release were insufficient to meet § 3582(c)(1)(A)'s exhaustion requirement where the defendant 'made no mention' of the specific grounds for compassionate release in his request to the warden." (quoting *Rice*, 848 F. App'x at 321)); *United States v. Ross*, No. CR-19-01270-001-TUC-JCH (BGM), 2022 WL 2665949, at *2 (D. Ariz. July 11, 2022) (citing *Rice* and finding the defendant failed to exhaust administrative remedies regarding certain bases for relief); *United States v. DeVore*, No. CR15-160 TSZ, 2024 WL 3226683, at *1 (W.D. Wash. June 28, 2024) (same).

the warden noted, "[t]here is no other information about [the defendant's] father in [the] PSR, nor does it state that [the defendant was] ever a caregiver for [his] father." *Id.* Lastly, the warden states that "there is no category" in the compassionate release guidelines "for incapacitation of a parent." *Id.*

Nothing in defendant's request or the warden's response suggests that defendant's personal health was at issue. The warden's response specifically clarifies that the request is based on defendant's father's needs, and there is no evidence that defendant responded clarifying that his health was also at issue. The BOP has therefore not had an opportunity to consider whether defendant's health warrants relief—either based on his personal health struggles or his concerns over COVID-19. Accordingly, defendant has not exhausted his administrative remedies as to the personal health bases stated in his motion, and the Court cannot consider such arguments as a basis for compassionate relief.

B.    **Extraordinary and Compelling Reasons**

Defendant has also failed to show extraordinary and compelling reasons meriting his release. According to the policy statements issued by the Sentencing Commission, there are six primary bases upon which a court may find extraordinary and compelling circumstances: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was a victim of abuse while serving the term of imprisonment; (5) other reasons "that, when considered by themselves or together with any of the reasons described in [categories] (1) through (4), are similar in gravity to those described" in the earlier categories; and (6) an unusually long sentence. U.S.S.G § 1B1.13; *see United States v. Castro-Camacho*, No. 24-6145, 2025 WL 2206110, at *1 (9th Cir. Aug. 4, 2025) (unpublished) ("On a compassionate-release motion brought under § 3582(c)(1)(A), a district court may reduce a sentence for 'extraordinary and compelling reasons' that are consistent with the Sentencing Commission's policy statement in U.S.S.G. [U.S. Sentencing Guideline] § 1B1.13."). As relevant here, the policy statement provides that "incapacitation of the defendant's parent" may qualify as an extraordinary and compelling family circumstance "when the defendant would be the only available caregiver for the parent." U.S.S.G § 1B1.13(b)(3)(C). The policy statement also provides that "rehabilitation of the

defendant is not, by itself, an extraordinary and compelling reason" for release; "[h]owever, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

It is beyond dispute that defendant's father is experiencing tremendous difficulties. He is very sick and facing multiple serious challenges at once, including diabetes, loss of a limb, and heart problems. *See* Def. Mot. 18-25. Incapacitation is a high bar, but the medical records demonstrate that defendant's father is quite ill with numerous, serious conditions that, when considered together, appear to meet this threshold. *See United States v. Guest*, No. CR ELH-16-0499, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (quoting BOP Program Statement § 5050.5) (explaining that incapacitation of a child's caregiver means that the "caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child."); *see also* BOP Program Statement § 5050.5 at 10, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (defining "incapacitation" of an inmate's spouse as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair" or a "severe cognitive deficit").

However, defendant has not demonstrated that he is the "only available caregiver" for his father. *Id.* § 1B1.13(b)(3)(C). In the absence of such evidence, courts within this Circuit have generally found that the inmate has not shown extraordinary and compelling family circumstances warranting compassionate relief. *See, e.g.*, *United States v. Osemwengie*, No. 3:11-cr-00060-HZ, 2025 WL 2945602, at *4 (D. Or. Oct. 17, 2025) (denying motion where the defendant had not "made a 'robust showing' that he [was] the only potential caregiver); *United States v. Abienga*, No. 1:22-cr-00030-DJC-BAM-1, 2025 WL 391016, at *3 (E.D. Cal. Feb. 4, 2025) (denying motion where "the record d[id] not establish that there is truly no one other than [the d]efendant who [could] step in and provide the care that this mother need[ed]");

11

*see also United States v. Moore*, No. 21-CR-02565-GPC-1, 2025 WL 2345226, at *5 (S.D. Cal. Aug. 13, 2025) (collecting cases). Here, defendant states that his father's wife recently died and that his father's only other kin is an estranged son who has previously stolen his father's medication. Def. Mem. It is undeniably tragic that defendant's father recently lost his wife and caregiver. And it is fair to assume that the estranged son cannot reasonably step into the caregiver role. However, defendant does not explain why his other family members—namely, his wife, close cousin, and adult son—could not provide for his father. Defendant lists his close cousin and son as sources of community support that could assist defendant upon his release. *See* Def. Mot. 9-11. Nothing in the record explains why these individuals could not provide similar support for defendant's father, particularly given the fact that, based on the listed addresses, it appears that defendant's wife and close cousin live about one-hour away from defendant's father. *See* Def. Mot. 9. Although defendant's father is seriously ill, defendant has not demonstrated that he is the only person who can serve as a caregiver. Accordingly, defendant has not met his burden of showing extraordinary and compelling circumstances meriting compassionate release.

Nor has defendant demonstrated that release is warranted based on his good conduct. To be sure, defendant's efforts at self-improvement and rehabilitation are commendable. Defendant has completed multiple courses relating to substance use, resilience, and conflict management, for which he deserves recognition. It also appears that defendant has maintained an exceptional disciplinary record while incarcerated. *See* Def. Mem. All of this is meaningful and worthy, but it does not constitute grounds for compassionate release. *See* U.S.S.G. § 1B1.13(d); *see also Osemwengie*, 2025 WL 2945602, at *2-3 (explaining how the defendant's commendable efforts at self-improvement do not constitute extraordinary and compelling reasons to reduce his sentence).

The Court is sympathetic to the difficulties defendant and his family are facing. As many courts have recognized, it is a sad inevitability that "the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid." *Moore*, 2025 WL 2345226, at *6 (quoting *United States v. Doolittle*, No. CR 19-501 (SRC), 2020 WL 4188160, at *2 (D.N.J. July 21, 2020)); *see*

12

*United States v. Crisp*, No. 1:11-CR-00026-JLT-1, 2022 WL 3448307, at *7 (E.D. Cal. Aug. 17, 2022) (internal quotation omitted) (quoting *United States v. Jackson*, 2022 WL 1182696, at *4 (E.D. Wash. Apr. 20, 2022)) ("'Unfortunately, when someone commits a serious crime and is caught, the felon's family members are almost always among the primary victims of the result of his misconduct and suffer both financially and psychologically.'"). Defendant has shown both that his father is facing significant hardships and that he himself has made notable progress during his incarceration. However, because he has not provided the Court with evidence about the unavailability of other adults in his father's life, he has not shown that exceptional and compelling circumstances warrant his release at this time. Defendant's motion is therefore denied.

## CONCLUSION

For the reasons stated herein, defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF [166], is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED this 3rd day of February, 2026.

Adrienne Nelson
United States District Judge